# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America *ex rel.* MARCUS WIGGINS, | ) ) ) |
| Plaintiff, | ) No. 05 C 4581 ) ) |
| v. | ) Honorable Charles R. Norgle ) |
| GREGORY LAMBERT, Warden, BIG MUDDY RIVER Correctional Facility, | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Marcus Wiggins's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, Marcus Wiggins ("Wiggins" or "Petitioner"), challenges his conviction for first degree murder, in violation of 720 ILL. COMP. STAT. 5/9-1(A)(1). Wiggins argues that he is entitled to habeas relief based on prosecutorial misconduct, which deprived him of his federal due process right to a fair trial, and ineffective assistance of counsel at both the trial and appellate level. For the reasons stated below, the petition is denied.

## I. BACKGROUND

On habeas review, the court must presume that the state courts' factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sumner v. Mata, 449 U.S. 539, 544-46 (1981); Todd v. Schomig, 283 F.3d 842, 846 (7th Cir. 2002). Wiggins has not presented clear and convincing evidence to rebut this presumption. Therefore, the court adopts the Illinois Appellate Court's recitation of facts. See

People v. Wiggins, No. 99-4331, (Ill. App. Ct. Jan. 25, 2002).

## A. Facts

On February 27, 1998, at 10:30 a.m., Theopolis Teauge, the victim, was driving his car along 51st Street in Chicago, Illinois along with Cedric Farley ("Farley") and Terrence Tyler ("Tyler"). Teague stopped his car at an unspecified intersection, directly behind Petitioner. Petitioner saw Teague, and backed into Teague's car. Petitioner and Teague then both drove away. Moments later, Teague parked his car on the 5200 block of South Marshfield. The three men got out to inspect the vehicle's damage. Petitioner drove up near Teague, and exited his car with one of three individuals that were now driving with him. Petitioner approached the victim and said "what is up now?" The victim and his companions fled. While they were running, Petitioner fired his gun, fatally wounding the victim. Farley approached the victim lying in an alley, who said that "Stutter" had shot him. At trial, the evidence showed that "Stutter" was Wiggins' nickname. Later in the day, Farely identified Petitioner in a lineup as the shooter.

## B. Procedural History

On September 19, 1999, a jury found Petitioner guilty of first degree murder, and sentenced him to 46 years imprisonment in the Illinois Department of Corrections. On appeal, Petitioner set forth the following prosecutorial misconduct claims. The prosecutor improperly commented on the pain the victim suffered before he died, and asked jurors to imagine themselves in the victim's position after being shot. Second, the prosecutor, through the victim's mother's testimony and a photograph of the victim during his closing argument, improperly commented on the effect of the victim's death on his family. Third, the prosecutor improperly inflamed the jury's fear about gang violence; and fourth, that the prosecutor improperly

2

commented on Petitioner's failure to testify, infringing on his 5th Amendment right against self incrimination. On January 25, 2002, the Illinois Appellate Court affirmed Petitioner's conviction, and denied each of his claims.

On May 13, 2002, the Illinois Supreme Court denied Wiggins' Petition for Leave to Appeal ("PLA"). Then, in August 2002, Petitioner filed a *pro se* Petition for Post-Conviction Relief in the Illinois State Court. In that petition, Wiggins argued that the government knowingly destroyed exculpatory evidence, specifically, his car that was used on the day of the crime. Additionally, Wiggins' petition included six instances of ineffective assistance of counsel, including the failure of trail counsel to call certain witnesses, and ineffective assistance of appellate counsel. The trial court dismissed the petition as frivolous and patently without merit. On December 23, 2003, the Illinois Appellate Court affirmed the dismissal of Petitioner's Post-Conviction Petition. Wiggins filed another PLA, which the Illinois Supreme Court denied on October 6, 2004.

Then, on August 8, 2005, Petitioner filed this Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his Petition, Wiggins realleges the prosecutorial misconduct claims he raised in his direct appeal, as well as the ineffective assistance of counsel claims he alleged in his Post-Conviction Petition in state court. Additionally, Wiggins claims that if no single instance of ineffective assistance of counsel existed, the cumulative effective of all five examples enumerated in his Petition constitutes ineffectiveness under Strickland v. Washington. On October 26, 2005, the State of Illinois filed its Response. Wiggins was granted two extensions of time to file his Reply, and yet never filed a submission. Wiggins' Petitioner under § 2254 is now before the court.

3

## II. ANALYSIS

**A. Standard of Decision**

Wiggins' petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is *contrary to* clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision is an *unreasonable application* of clearly established Supreme Court law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. In order for a state court decision to be considered "unreasonable" under this standard it must

4

be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.").

Before reviewing the Illinois courts' decisions, however, the court must determine whether Wiggins fairly presented his federal claims to the state courts. Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A). Any claim not presented to the state's highest court is deemed procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (indicating that "a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process").

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. Cf. Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on

state law grounds. See Stewart v. Smith, 536 U.S. 846, 860 (2002); see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory.") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991). For example, waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Wright v. Walls, 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state ground in Illinois); Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). However, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Coleman, 501

6

U.S. at 750; Anderson v. Cowen, 227 F.3d 893, 899 (7th Cir. 2000).

**B. Wiggins' Petition**

*1. A Majority of Wiggins' Ineffective Assistance Claims are Procedurally Defaulted*

*a. Ineffective Assistance of Counsel Claims*

The majority of Petitioner's ineffective assistance of counsel claims in his § 2254 petition are procedurally barred. Wiggins had previously raised the ineffective assistance of counsel claims enumerated in his second claim of his § 2254 motion in his post-conviction petition filed in state court. See Resp., Ex. D. Specifically, Wiggins alleges the following actions by his attorney amount to an ineffective assistance claim. His trial counsel failed to raise the issue of the state's destruction of exculpatory evidence; that trial counsel failed to call defendant's alibi witnesses after having subpoenaed them to court; that trial counsel failed to subpoena a witness with knowledge of defendant's car, and whether it was operating on the night of the murder; trial counsel's failure to question jury venire members about underlying prejudices against gang members; and that trial counsel failed to object to prejudicial issues and to file post-trial motions preserving issues for direct appeal.

On appeal of the denial of his post-conviction petition, Wiggins only raised the ineffectiveness claim with respect to his trial counsel's failure to call a witness to testify about the condition of his car at the time of the murder. See Pet. at 3A. Wiggins also claims that he was denied a fair trial "when state agents destroyed [his] vehicle . . . prior to defense counsel having the opportunity to examine the evidence." See id. However, Wiggins never raised this issue on direct appeal or in his PLA from the appellate court's affirmation of the conviction. Because Wiggins did not present all of his ineffective assistance of counsel issues to the appellate

7

court, this did not allow the state court "one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." O'Sullivan, 526 U.S. at 846.

Additionally, Claims Three and Four of Wiggins' § 2254 Motion arise out of the ineffective assistance of counsel claims found in Claim Two. See Pet., at 3A. Specifically, Wiggins alleges that while the individual claims of ineffective assistance of counsel do not constitute a violation of his rights, the cumulative effective of trial counsel's ineffectiveness amounts to a violation under Strickland. See id. Wiggins also alleges ineffective assistance of appellate counsel in Claim Four, and that his trial counsel was once again ineffective for failure to dismiss the indictment.

Wiggins did not present any of these claims at the state level, either in his direct appeal, or his post-conviction petition. Because Wiggins did not present these claims to the Illinois Supreme Court, they are deemed procedurally defaulted. See O'Sullivan, 526 U.S. at 844-45. As a result, he cannot present these claims for the first time in his federal habeas petition. The only remaining claim not procedurally barred is the allegation that trial counsel was ineffective for not calling witnesses to testify regarding the condition of Wiggins' car on the day of the crime.

### b. Trial Counsel's Failure to Call Witnesses

Wiggins' remaining ineffective assistance of counsel claim alleges that trial counsel was ineffective for his failure to call witnesses to testify about the inoperable condition of Wiggins' car on the date of the murder. In order to establish that his trial counsel was ineffective, Carpenter must "show that [his] counsel's performance was deficient, and that the deficiency

8

prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689).

There is therefore a strong presumption that Wiggins' counsel at trial performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Wiggins must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687). In rare cases, an attorney's failure to investigate or call certain witnesses can constitute ineffective assistance of counsel. See Hampton v. Leibach, 347 F.3d 219 (7th Cir. 2003); Sullivan v. Fairman, 819 F. 2d 1382, 1390 (7th Cir. 1987).

However, this is not one of those rare instances. The trial court found that the evidence did not indicate that Wiggins had access to only one car, or that the car Wiggins and his passengers used was inoperable at the time of the murder. The appellate court affirmed the trial court's findings, and held that Wiggins did not show that these findings were incorrect.

9

Furthermore, the appellate court held that Wiggins did not demonstrate that he was prejudiced by trial counsel's decision not to call any witnesses to testify that a car Wiggins owned was inoperable on the date of the crime.

In his present motion, Wiggins offers no evidence that demonstrates "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." " United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). The court will therefore adhere to the "underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" Holman, 314 F.3d at 840 (quoting Strickland, 466 U.S. at 689). As a result, Wiggins' ineffective assistance of counsel claim is denied.

### 2. Wiggins' Prosecutorial Misconduct Claims

#### a. Applicable Law

Wiggins' claims of prosecutorial misconduct are preserved for habeas review by this court. The leading United States Supreme Court case on the issue of improper prosecutorial comments during trial is Darden v. Wainwright, 477 U.S. 168 (1986). The Seventh Circuit, in adhering to Darden, follows a two-step course when deciding whether prosecutorial misconduct, including improper comments to the jury at trial, is so egregious that it requires a new trial as a matter of constitutional law. See Whitehead v. Cowan, 263 F.3d 708, 728 (7th Cir. 2001).

First, the court must look at the comments in isolation to determine if they were improper. See id. If they are proper, the analysis ends. See id. If the comments appear improper, the court must then examine the comments in light of the record as a whole to determine whether they deprived the defendant of a fair trial. See id. (citing United States v.

Whitaker, 127 F.3d 595, 606 (7th Cir. 1997)). To make this determination, a court must consider six factors set forth in Darden: "(1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the response; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut." Id. (citing Howard v. Gramley, 225 F.3d 784, 793 (7th Cir. 2000)).

### b. The Prosecutor's Statements Amounted to Harmless Error

Wiggins claims that the prosecutor committed misconduct when he: (a) commented on the victim's pain before death, and asked the jurors to imagine themselves in the victim's position; (b) solicited testimony from the victim's mother about the effect of the victim's death on the family; (c) made reference to the fact that Wiggins did not testify; and (d) played upon jurors' fears of gang violence. See Pet., at 5.

The Illinois State Appellate court denied all four of Wiggins' prosecutorial misconduct claims on independent state grounds. See Resp., Ex. A, pp. 7-9. In regards to the prosecutor's statement about the victim's pain before his death, the appellate court held that while "the State was free to comment on the nature of the murder . . . the State was not allowed to ask jurors to imagine themselves in the victim's dire condition . . . . People v. Spreitzer, 123 Ill. 2d 1, 38 (1988)." Resp., Ex. A, at 5. With respect to the second claim, that the prosecutor inappropriately solicited testimony from the victim's mother, the appellate court held that "in light of the overwhelming evidence against defendant, [the victim's mother's] testimony did not place such undue emphasis on the victim's surviving relatives that defendant's conviction must be reversed." Id. at 8.

11

In regards to Wiggins' third claim, that the prosecutor impermissibly made reference to Wiggins' decision not to testify in his closing statements, the appellate court found such statements as harmless error. The appellate court stated that defense counsel failed to object to the State's comments, and in fact "incorporated it into her own closing argument." Id. at 9.

Lastly, the appellate court turned to Wiggins' claim that the prosecutor inflamed the jury regarding gang violence. The court found that while "such comments have the tendency to improperly shift the focus of attention away from the actual evidence in the case (People v. Fluker, 318 Ill. App. 3d 193 (2000)), that the defendant and victim were gang members is admissible to provide motive for an otherwise inexplicable act." Resp., Ex. A., at 9.

This court acknowledge's that some of the prosecutor's statements were not proper, and yet in light of the totality of the evidence, such improper statements were harmless error. The Appellate Court's ruling was supported by the record, and cites to several Illinois Supreme Court, and Illinois Appellate Court decisions. The court evaluated both the State's and Petitioner's arguments, in light of the evidence and witnesses presented at trial. Three witnesses identified Petitioner as the shooter, and the victim identified Petitioner by nickname as the man who shot him. Viewing this overwhelming evidence together, the Appellate Court found that the prosecutor's comments about Wiggins' failure to testify, and that the jurors should imagine themselves in the victim's position amount only to harmless error.

## III. CONCLUSION

For the foregoing reasons, Marcus Wiggins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 8-10-07